UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT GLEN COLEMAN (#494656)      CIVIL ACTION NO.

VERSUS     19-395-JWD-SDJ

JAMES LeBLANC, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 28, 2020.

                                **SCOTT D. JOHNSON**
                                **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ROBERT GLEN COLEMAN (#494656)**                **CIVIL ACTION NO.**

**VERSUS**                                                              **19-395-JWD-SDJ**

**JAMES LeBLANC, ET AL.**

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

Before the Court is a Motion to Dismiss ("Motion")[1] filed on behalf of Carl Delaney, Curtis Greene, Joseph Lamartiniere, James LeBlanc, Jimmy Smith, and Darrel Vannoy. The Motion is unopposed.[2] For the following reasons, the undersigned recommends the Motion be granted in part and denied in part.

**I.    Background**

The *pro se* Plaintiff, Robert Glen Coleman, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, instituted this action pursuant to 42 U.S.C. § 1983 against James LeBlanc, Darrel Vannoy, Jimmy Smith, Carl Delaney, Joseph Lamartiniere, Marcus Pickens, Curtis Greene, and Robert Beverly[3] alleging that his constitutional right to be free from cruel and unusual punishment was violated when Pickens, Greene, and Beverly failed to intervene while Coleman was being stabbed by another offender.[4]

Coleman alleges that on or about January 26, 2018, he was assigned to be a tier walker in the "transitional unit," or T.U., which is "infamously" dangerous, according to Coleman.[5] While Coleman was performing his duties, a maximum security inmate was being prepared to be

---

[1] R. Doc. 9.
[2] Though no technical opposition has been filed, Coleman requested leave to file an amended complaint in an attempt to correct the deficiencies noted in the Motion to Dismiss. (*See* R. Doc. 17, p. 4). That Motion was granted. (*See* R. Doc. 20). However, the amendments do not affect the arguments presented in the Motion to Dismiss.
[3] Beverly was originally named as Robert Bellmany; this was changed via amendment. (*See* R. Doc. 21).
[4] R. Doc. 1, pp. 5-8.
[5] R. Doc. 1, p. 5.

transported to the shower, but while inmate was being prepared by Pickens, Pickens allegedly failed to pat-down or frisk the inmate.[6] Once in the shower cell, the inmate's restraints were removed.[7] The inmate called Coleman to the shower cell and requested a lighter, which Coleman refused to procure for the inmate.[8] Coleman's refusal allegedly angered the inmate, so the inmate exited the shower cell armed with a knife and began stabbing Coleman.[9] Coleman avers that Pickens, Greene, and Beverly witnessed the stabbing, but no one attempted to intervene.[10] Coleman allegedly called out for help, but Pickens, Greene, and Beverly stood by until the inmate voluntarily stopped stabbing Coleman and returned to his shower cell.[11] Coleman states he was transported to Our Lady of the Lake for treatment of his injuries and was, thereafter, treated further at the R.E. Barrow Treatment Center at LSP.[12] Plaintiff requests injunctive and monetary relief.[13]

## II. Law & Analysis

### A. Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[14] and *Ashcroft v. Iqbal*,[15] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[16] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] "A claim has

---

[6] R. Doc. 1, p. 7.
[7] R. Doc. 1, p. 7.
[8] R. Doc. 1, p. 7.
[9] R. Doc. 1, p. 7.
[10] R. Doc. 1, p. 8.
[11] R. Doc. 1, p. 8.
[12] R. Doc. 1, p. 8.
[13] R. Doc. 1, p. 9.
[14] 550 U.S. 544 (2007).
[15] 556 U.S. 662 (2009).
[16] *Bell Atlantic Corp*. 550 U.S. at 555.
[17] *Ashcroft*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544.

2

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[19] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[20]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[21] Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[22] Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[23] The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[24] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[25] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[26]

### B. Coleman has failed to state a conditions of confinement claim

It appears that Coleman is attempting to state a claim based upon (1) his job assignment as a tier walker in the T.U.; (2) his assertion that the T.U. is generally dangerous; and (3) the allegation

---

[18] *Id.*
[19] *Id.* at 679.
[20] *Id.* at 678 (internal quotation marks omitted).
[21] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[22] *Id.* (citation omitted).
[23] Fed. R. Civ. P. 8(a)(2).
[24] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[25] *Papasan v. Allain*, 478 U.S. 265, 286 (1986),
[26] *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted).

3

that defendants have taken "no action to solve the problem."[27] Coleman alleges that all defendants are liable by virtue of having knowledge of the general dangerousness of the section of the prison to which he was assigned yet not doing anything to change the conditions. Such a claim is properly classified as a conditions of confinement claim and requires specific facts showing the conditions to which he was subjected violated his Eighth Amendment rights.[28] Coleman has failed to allege specific facts that may allow his claim to proceed at this time. Facts that may support a such a claim include, for example, the number of injury-causing incidents occurring in the T.U. versus LSP as a whole; concrete examples of incidents similar to the incident at issue that allegedly occurred prior to Coleman's incident, or number of stabbings in the T.U. Coleman has not provided such facts; rather, he has stated in a conclusory fashion that all defendants were aware of "incidents" occurring in the T.U.[29]

### C. Plaintiff has failed to state a claim upon which relief may be granted against James LeBlanc, Darrel Vannoy, Jimmy Smith, Carl Delaney, and Joseph Lamartiniere

Though Plaintiff names LeBlanc, Vannoy, Smith, Delaney, and Lamartiniere in his Complaint, he fails to make any allegations against these defendants, with the exception of stating that they should be liable for subjecting him to the conditions present for a tier walker in the T.U., discussed above. Coleman has ultimately named these defendants because of their supervisory

---

[27] R. Doc. 21, p. 19.

[28] *See Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1997) (wherein the Fifth Circuit Court of Appeals concluded that the following conditions at LSP violated the Constitution: insufficient cell space resulting in an inability to segregate dangerous prisoners; 270 stabbings; 20 deaths; easy inmate access to weapons; lack of security personnel to confiscate weapons; fire and safety hazards; sanitations problems, including accumulation of sewage under the main kitchen and a serious rodent problem; lack of medical staff resulting in inmates administering treatments; unsanitary conditions; substandard equipment; and an untrained unlicensed pharmacist.). Plaintiff has failed to provide the specific facts necessary to prevail on such a claim.

[29] R. Doc. 21, p. 19. Coleman alleges "numerous incidents" and problems such as faulty cell-doors. He avers the defendants "failed to implement a plan to stop plaintiff … from entering this dangerous situation." As recognized by many courts, "[p]risons are necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality ... among prisoners" may occur. *See Farmer v. Brennan*, 511 U.S. 825, 858–59 (1970) (Thomas, J., concurring). Thus, numerous incidents and a dangerous situation alone do not render conditions unconstitutional.

4

roles at LSP and within the Department of Public Safety and Corrections.[30] Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that cause constitutional deprivation or implement unconstitutional policies that causally result in plaintiff's injury.[31] Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.[32] Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[33] Supervisory liability[34] can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation.[35]

Coleman's Complaint is devoid of any allegations that these Defendants were personally involved in the incident that caused the alleged constitutional violation or that they implemented a policy that was so deficient that it was the moving force behind the alleged constitutional violation.[36] In Coleman's amended complaint, he admits that "these supervisors had no direct

---

[30] R. Doc. 1.
[31] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).
[32] *See Iqbal*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").
[33] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).
[34] Though the term supervisory liability is often used, the Supreme Court has described this as a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.
[35] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).
[36] R. Doc. 1.

participation in the event that led to plaintiff [sic] injuries."[37] Coleman goes on to state that "protocols, policies and procedures are already in place but are being carried out, too, little and, too late."[38] Thus, Coleman has also admitted that no policy has been implemented that is so deficient that it may be seen as a repudiation of constitutional rights; rather, it appears Coleman believes enforcement of the current policies would prevent constitutional violations. Further, as discussed above, he only makes general allegations regarding the general dangerousness of the T.U., which are not viable.[39] Accordingly, because Plaintiff has failed to implicate LeBlanc, Vannoy, Smith, Delaney, and Lamartiniere in the alleged constitutional violations that took place, Coleman's claims against these defendants should be dismissed.

### D. Plaintiff has failed to state a claim for failure to protect against Marcus Pickens, Curtis Greene, and Robert Beverly[40]

To the extent Plaintiff has attempted to state a claim for failure to protect, such a claim fails. Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates.[41] Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates."[42] However, "[p]rison officials are not . . . expected to prevent all inmate-on-inmate violence."[43]

---

[37] R. Doc. 21, p. 18.
[38] R. Doc. 21, p. 17.
[39] R. Doc. 1, p. 5.
[40] Though Pickens and Beverly have not been served, it is appropriate to discuss Plaintiff's claims against these officers with the claims against Greene as the officers are similarly situated. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("It would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants."). *See also Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001). *See also Spoon v. City of Galveston, Texas*, 2018 WL 6246693 (S.D. Tex. Nov. 29, 2018) (a determination that one defendant was qualifiedly immune from suit inured to the benefit of similarly situated defendants). Marcus Pickens has been identified as Marcus Pickett, and Robert Beverly has been identified as Jessie Bellamy by Defendants. (R. Doc. 13). However, because Plaintiff has not amended his complaint to reflect the proper names of these Defendants, they are referred to as they are named in the complaint, as amended.
[41] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).
[42] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
[43] *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir 2003).

6

"Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law.[44] An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[45] A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.[46] In other words, in order for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.[47] The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[48] Mere negligence is insufficient to establish a failure to protect claim.[49] A paramount inquiry for a failure to protect claim is whether the defendant had knowledge of a *specific* threat posed by one inmate to another.[50]

Coleman does not allege that the inmate who attacked him was on his enemy list or that any officer was aware of any facts that may have indicated the inmate posed a substantial risk of serious harm to Coleman. He also fails to allege any facts that indicate an attack was foreseeable, again with the exception of his general allegations of the alleged "dangerousness" of the T.U. Similar to a conditions of confinement claim, deliberate indifference requires a level of awareness of a specific risk based upon specific information rendering general knowledge of general

---

[44] *Farmer*, 511 U.S. at 837.
[45] *Id.*
[46] *Id.* at 847.
[47] *Johnston*, 786 F.2d at 1259.
[48] *Farmer*, 511 U.S. at 837.
[49] *Id.* at 837.
[50] *See Mitchell v. Thomas*, 17-90, 2018 WL 4572667, at *6-7 (M.D. La. Sept. 24, 2018).

7

dangerousness or the like insufficient to support a finding of deliberate indifference.[51] Further, the mere fact that an inmate has armed himself does not create a claim for failure to protect.[52] Thus, Coleman has failed to state a claim for failure to protect against Pickens, Greene, and Beverly.[53]

### E. Plaintiff has stated a claim for failure to intervene against Marcus Pickens, Curtis Greene, and Robert Beverly, with exceptions, and the officers are not entitled to qualified immunity based on the allegations of the complaint

With respect to Plaintiff's claims for failure to intervene against Pickens, Greene, and Beverly, however, Plaintiff has stated a claim upon which relief may be granted. A failure to intervene claim is distinct from a failure to protect claim, and one can exist without the other.[54] A prison guard has a duty to intervene and attempt to end an assault on an inmate.[55] However, officials who fail to prevent an injury inflicted by fellow prisoners are only liable if they possess the requisite mental state, which is that of deliberate indifference.[56] If a prison official is present at the time of an assault, he is deliberately indifferent to the inmate's safety, unless there is "evidence justifying the correctional officer's failure to intervene, such as when intervention would threaten the health and safety of all concerned (*i.e.*, the guard is alone and unarmed or another

---

[51] *Walker v. Davis*, 2019 WL 2465298 (E.D. Tex. Jan. 10, 2019). *See also Van Williams v. Samaniego*, 2007 WL 9701460 (W.D. Tex. Feb. 22, 2007) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference."). *See also Van Williams v. Samaniego*, 2007 WL 9701460 (W.D. Tex. Feb. 22, 2007) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").

[52] *See Robinson v. Lee*, Civil Action No. 14-2604, 2015 WL 2452516 (W.D. La. May 21, 2015) (failure to protect claim where inmate was stabbed by other inmates rejected and dismissed for failure to state a claim despite fact that inmates were armed).

[53] In Coleman's amended complaint, he appears to allege that being required to work an "extra shift" contributed to his injuries because he was not alert. (*See* R. Doc. 17-1). To the extent Coleman is attempting to make a claim based on being required to work an extra shift as a tier walker, he still fails to state a claim because as discussed above, the paramount inquiry is what knowledge officers had regarding any risk to the inmate. Here, the officers had no specific knowledge that Coleman may be the subject of an attack, and the fact that he was fatigued does not affect this analysis.

[54] *See Outley v. Batiste*, Civil Action No. 17-1782, 2019 WL 4265075 (M.D. La. Aug. 23, 2019) (citing *Johnson v. Boyd*, 701 Fed.App'x. 841 (11th Cir. 2017) (wherein the Eleventh Circuit held a plaintiff had sufficiently stated a cause of action for failure to intervene but had not sufficiently stated a cause of action for failure to protect).

[55] *Weathington v. U.S.*, Civil Action No. 10-359, 2011 WL 1211509 at * 9 (W.D. La. March 3, 2011).

[56] *Id. citing MacKay v. Farnsworth*, 48 F.3d 491 (10th Cir. 1995).

8

guard has been taken hostage)."[57] Further, regardless of whether the Eighth Amendment imposes an obligation on a prison official to intervene directly in an inmate fight when doing so would place him or her in danger of physical harm, it demands that he or she take *some* action to halt the violence.[58]

Though immediate intervention is not required, an official is required to take some steps to halt inmate on inmate violence. The case law consistently holds that deliberate indifference does not exist in situations where officers have taken some steps to halt the violence, including giving verbal orders,[59] leaving to get help,[60] and leaving to obtain tools, such as weapons and teargas, to halt the violence.[61] However, Coleman's complaint, as amended, states that the three officers simply stood by and watched as he was attacked. According to his version of events, Pickens, Greene, and Beverly did not give any verbal orders to stop[62] and did not retreat to obtain help or tools to stop the violence; rather, the officers simply stood by as the attack occurred.

Defendants allege, however, that they are entitled to qualified immunity. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[63] Taking the facts as alleged in the light most favorable to the plaintiff, the Court considers whether the defendant's conduct violated the

---

[57] *Id.* citing *Williams v. Mueller*, 13 F.3d 1214, 1215-16 (8th Cir. 1994) and cases cited therein.
[58] *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (comparing negligence to deliberate indifference in a failure to intervene context and implying that standing by and allowing an attack to proceed constitutes deliberate indifference). "Despite its concern with the Fourteenth Amendment's due process clause, *Davidson* constitutes part of Eighth Amendment jurisprudence." *Payne v. Collins*, 986 F.Supp. 1036, n. 59 (E.D. Tex. June 25, 1997).
[59] *Verette v. Major, et al.*, Civil Action No. 07-547, 2008 WL 4083032 (W.D. La. Aug. 25, 2008) (When an inmate attacked another, officers gave direct verbal orders to the inmate attacker to put down the tool he was using as a weapon, and the inmate obeyed the verbal orders. The Court found the officers were entitled to qualified immunity).
[60] *See Rios v. Scott*, 100 Fed.Appx. 270 (5th Cir. 2004) (an officer did not immediately intervene in an attack when it commenced but ran to get help).
[61] *See Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006) (officers did not immediately intervene in an attack but ran to alert other officers of an ongoing attack and to obtain weapons and tear gas).
[62] *Verette v. Major, et al.*, Civil Action No. 07-547, 2008 WL 4083032 (W.D. La. Aug. 25, 2008), cited by Defendants, is distinguishable because in that case verbal orders to stop the attack were given and obeyed by the attacker.
[63] *Huff v. Crites*, 473 Fed.Appx. 398 (5th Cir. 2012).

9

plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. [64] This inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition. To determine whether a constitutional right was clearly established, The Court must decide whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation he confronted. While ordinarily one who pleads an affirmative defense has the burden to establish his entitlement to that defense, where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff has the burden to rebut the defense by establishing that the defendant's allegedly wrongful conduct violated clearly established law.[65] To defeat the qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show the official's conduct violated clearly established constitutional or statutory rights. Although a plaintiff can file a detailed reply to address the assertion of the qualified immunity defense, that is only required if the complaint is not sufficiently detailed to create a genuine issue as to the illegality of the defendant's conduct.[66] If the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the assertion of the qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss.[67]

---

[64] 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").
[65] *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (quotations and citations omitted).
[66] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (*en banc*).
[67] *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (*en banc*).

Defendants contest whether the law is clearly established that Defendants were required to take some action.[68] Defendants also argue that their actions were not objectively contrary to clearly established law.[69] At the time of this incident, the law, as stated above in this section, was clear that an officer standing by and doing nothing while one inmate attacked another violated the constitution. *Some* action is required. Because the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the qualified immunity defense fails at the stage of the proceeding. Accordingly, Coleman's claims for failure to intervene against Pickens, Greene, and Beverly should remain, with the following exceptions.

### i. Plaintiff's claims for monetary relief against Pickens, Greene, and Beverly in their official capacities are barred by the Eleventh Amendment

Coleman's claims against defendants for monetary relief in their official capacities are barred. 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[70] In addition, in *Hafer v. Melo*,[71] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit for monetary damages against a state official in an official capacity is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[72] Accordingly, Coleman's § 1983 claims for monetary damages asserted against Defendants in their official capacities are subject to dismissal.

---

[68] R. Doc. 9-1, pp. 4-6.
[69] R. Doc. 9-1, pp. 6-7.
[70] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[71] 502 U.S. 21 (1991).
[72] *Id*. at 25.

### ii. Plaintiff's claims for injunctive relief are inappropriate

For injunctive relief, Coleman requests that this Court order defendants to "make Plaintiff's medical record part of the administrative record for possible review or other litigation;" schedule Plaintiff for "testing for G.E.D. school;" give him trustee status; and to not retaliate against him.[73] Coleman's requests regarding his medical record, school, and status concern internal operations of the prison; federal courts ordinarily accord great deference to the internal administrative decisions of prison officials, and to entertain a request such as is presented here would be against precedent and the public's interest, as well as a possible abuse of judicial resources.[74] Coleman's request that defendants be enjoined from taking retaliatory measures must be denied because Coleman has not alleged any facts indicating he has been threatened with retaliatory measures.[75] Accordingly, Coleman's requests for injunctive relief should be denied.

### iii. The Court should decline to exercise supplemental jurisdiction

To the extent Plaintiff seeks to invoke this Court's supplemental jurisdiction on the basis that Defendants actions constituted negligence and/or unlawful conduct, this Court should decline to exercise such supplemental jurisdiction. A district court is authorized to decline supplemental jurisdiction over such claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[76] In the instant case, it is appropriate for the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

---

[73] R. Doc. 1, p. 9.
[74] *Ware v. Tanner*, Civil Action No. 12-2250, 2013 WL 5589506 at *10 (E.D. La. Oct. 10, 2013) *citing Royal v. Clark*, 447 F.2d 501, 502 (5th Cir. 1971); *Krist v. Smith,* 439 F.2d 146 (5th Cir.1971); *Haggerty v. Wainwright,* 427 F.2d 1137 (5th Cir.1970).
[75] *See Stevens v. Heard*, 674 F.2d 320, 324 (5th Cir. 1982).
[76] 28 U.S.C. § 1367.

## RECOMMENDATION

**IT IS RECOMMENDED** that the Court decline to exercise supplemental jurisdiction with respect to Plaintiff's potential state law claims, that the Motion to Dismiss[77] be **GRANTED IN PART AND DENIED IN PART,** and Coleman's claims arising from his conditions of confinement, as well as all claims against James LeBlanc, Darrel Vannoy, Jimmy Smith, Carl Delaney, and Joseph Lamartiniere be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Coleman's claim for failure to protect against Curtis Greene, claims for monetary relief against Curtis Greene, in his official capacity, and claims for injunctive relief against Greene be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Coleman's claim for failure to protect against Marcus Pickens and Robert Beverly, claims for monetary relief against Pickens and Beverly, in their official capacities, and claims for injunctive relief against Pickens and Beverly be **DISMISSED WITH PREJUDICE**, *sua sponte*.

**IT IS FURTHER RECOMMENDED** that this matter be referred back to the magistrate judge for further proceedings on Coleman's remaining claims; *i.e.*, his claim for monetary relief against Marcus Pickens, Curtis Greene, and Robert Beverly, in their individual capacities, for failure to intervene in the incident occurring on January 26, 2018.

Signed in Baton Rouge, Louisiana, on July 28, 2020.



**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[77] R. Doc. 9.